# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| THOMAS BURRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-02631-JTF-atc |
| ) | |
| TIPTON COUNTY ELECTION ) | |
| COMMISSION, et al. ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiff Thomas Burrell's Motion For Temporary Restraining Order, filed on September 20, 2022. (ECF No. 2.) Defendant Mark Goins filed a Response to the Motion on September 23, 2022. (ECF No. 15.) All other defendants joined Goins's Response in a separate Response filed on September 26, 2022. (ECF No 18.) A hearing on the motion was held the same day on September 26, 2022. (ECF No. 19.) For the below reasons, the Motion is **DENIED**.

### I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves Burrell's application to be placed on the ballot in the upcoming mayoral election for the town of Mason, Tennessee. Mason's town charter provides that "no person shall be eligible for the office of Mayor or Alderman unless they are a qualified voter and have been a bona fide resident of the Town for six (6) months proceeding the election." (ECF No. 2-1, 3.) Burrell alleges that he re-established residency in Mason in May 2022. (ECF No. 1, 4.) Evidence provided at the hearing demonstrated that Burrell signed a lease for a piece of property in Mason

on May 4, 2022, but that he did not begin living on the property until at least June 2022.[1] (*see also* ECF No. 2-5, 1.) Specifically, Burrell moved a trailer onto the property sometime in June 2022 that he alleges he lives in full time. The house located on the property is still not occupied due to remodeling, but Burrell established water service for the property on May 6, 2022, and electricity service on August 23, 2022. Burrell stated that adjacent to the residence are two (2) additional buildings, of which one is used as a business office. Other than his presence at the property, Burrell stated that he worked at another office in Mason and maintained farming operations in Tennessee, Mississippi and Alabama. (ECF No. 1, 4.)

On June 20, 2022, Burrell filed a Petition as a candidate for Mayor of Mason. (*Id.*) On August 22, 2022, Cindy Pinner, the Administrator of Elections for the Tipton County Election Commission, sent Burrell a letter that stated the Commission would be "holding a meeting to review and determine [his] qualifications to have [his] name placed on the November 8, 2022 Town of Mason ballot for Mayor" and that they would be specifically looking at whether he met the residency qualifications. (ECF No. 2-2, 1.) The letter noted that "a candidate for Mayor must have lived in the Town for six months before the election." (*Id.*) The meeting was set for August 31, 2022, at 3:00 p.m. (*Id.*) At the hearing, Defendants' counsel stated that Burrell attended this meeting with his own counsel, and afterwards was given until September 9, 2022 to provide any additional evidence supporting his residency in Mason. On September 9, 2022, the Commission met again and determined that Burrell did not satisfy the residency requirements in the charter and later sent him a letter memorializing this decision. (ECF No. 2-3, 1.) This letter stated that the decision was made in Burrell's presence. (*Id.*) Burrell contends that he then sent a letter to the

---

[1] At the hearing, a large amount of testimony and questions revolved around apparent confusion regarding this property's proper address. Ultimately, these issues are not relevant to the Court's Order and analysis, and discussion of the problem is omitted.

Commission asking them to not print any ballots due to issues he had with how the decision was made and procedural concerns he had regarding public notice of the meetings, the minutes and vote breakdown of the meeting.

At the hearing before this Court, Defendants' counsel stated that due to the Commission's decision, Burrell was never placed on the ballot. She explained that once a Commission approves a candidate after assessing their qualifications, a sample ballot must be sent to the State Election Commission to be reviewed, approved, and sent back to the county in order to print any necessary physical ballots and correctly program voting machines. Counsel also stated that some ballots for the relevant election have already been printed and mailed to overseas and military voters, due to the statutory requirement under the Military and Overseas Voters Empowerment Act that ballots be mailed no later than 45 days before an election.

Burrell filed the present case on September 20, 2022. (ECF No. 1.) That same day, he filed the present Motion for Temporary Restraining Order. (ECF No. 2.) In the Motion, Burrell argues that the six-month residency requirement is unconstitutional, that the Commission's decision violated his right to vote, and that the Commission violated multiple provisions of the Tennessee Open Meetings Act in reaching its decision and through its conduct after the hearings. For relief, Burrell requests that the Court declare the residency requirement unconstitutional, "enjoin Defendants . . . from removing the name of Thomas Burrell as a candidate[,]" declare the Commission's proceedings on August 31 and September 9, 2022 "void as violation of the Tennessee Meetings Act[,]" "consolidate the hearing on the motion for preliminary injunction with the trial on the merits," and grant any further relief that may be just and equitable. (ECF No. 1, 16.) Defendant Mark Goins filed a Response on September 23, 2022, which all other defendants joined on September 26, 2022. (ECF Nos. 15, 18.) In this response, the Defendants argue that

Burrell has not stated a claim under federal law, and that his claims under the Tennessee Open Meetings Act are consequently not properly before the Court. A hearing was held on September 26, which included limited testimony on the issue of Burrell's residency as well as legal argument regarding the Court's jurisdiction.

## II. LEGAL STANDARD

A temporary restraining order "is an extraordinary remedy 'designed to preserve the relative positions of the parties until a trial on the merits can be held.'" *Thomas v. Schroer*, 116 F. Supp. 3d 869, 874 (W.D. Tenn. 2015) (quoting *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009)). There are four factors that a district court should consider when evaluating a request for a temporary restraining order: "(1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable harm without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order." *Beckerich v. St. Elizabeth Medical Center*, 563 F. Supp. 3d 633, 638 (E.D. Ky. 2021) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002)). "The four considerations applicable to [temporary restraining orders] are factors to be balanced and not prerequisites that must be satisfied." *American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). Where the government is the defendant, the final two considerations merge. *Albino-Martinez v. Adducci*, 454 F. Supp. 3d 642, 650 (E.D. Mich. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## III. LEGAL ANALYSIS

1. *Strong Likelihood of Success on the Merits*

Burrell makes three identifiable claims, two brought as 42 U.S.C. § 1983 claims under federal law and one under state law. Burrell's motion does not advance an argument on the likelihood of success prong, although his complaint and counsel's argument at the hearing did cite law and facts intended to support the merits of his claims.[2] First, he argues that the six-month residency requirement to run for mayor in the Mason town charter is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, due to it infringing on his right to travel. Second, he argues that the Commission's decision to deny his candidacy violates his right to vote under the First and Fourteenth Amendments. Third, he argues that the Commission violated the Tennessee Open Meetings Act through defective notice, improper minutes keeping, and refusing to provide him with a vote breakdown or explanation of the decision to deny his ballot application.

    a. *Is the six-month residency requirement unconstitutional?*

Burrell's complaint contends that the six-month residency requirement to run for Mayor of Mason is unconstitutional. In support, Burrell cites only one Sixth Circuit case, *Green v. McKeon*, which found that residency requirements are subject to strict scrutiny by courts and that a two year residency requirement was too broad a means to achieve the relevant Commission's stated objective of requiring each candidate "to become familiar with the local form of government and the problems peculiar to the municipality." 468 F.2d 883, 885 (6th Cir. 1972). The Defendants contend that *Green* is no longer good law and that residency requirements only require a rational basis justification.

The Defendants are partially correct. The Sixth Circuit affirmatively rejected *Green* in *Beil v. City of Akron*, decided nine years later. The relevant language from *Beil* is reproduced below:

> The District Court relied upon this Court's decision in *Green v. McKeon*, 468 F.2d 883 (6th Cir. 1972). That case, decided in 1972,

---

[2] Burrell's motion contains only one sentence related to this factor: "A durational residency requirement for candidates is subject to strict scrutiny." (ECF No. 2, 4.)

> held unconstitutional a two-year residency requirement for eligibility for elective office of the Charter of the City of Plymouth, Michigan. The Court applied strict scrutiny because the provision "operate(d) to penalize the exercise of the basic constitutional right to travel." *Id*. at 884. Finding a two-year requirement to be unsuited to the City's goals because it was both underinclusive and overinclusive, the Court struck down the charter provision.
>
> Two subsequent summary affirmances by the Supreme Court holding that seven year durational residency requirements are not violative of the equal protection clause require that we hold Green is no longer controlling precedent and that we reverse the District Court. In *Sununu v. Stark*, 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 434 (1975), *aff'g* 383 F. Supp. 1287 (3-judge panel, D.N.H.1974), the Court affirmed a decision which held that a seven year residency requirement for state senator was constitutional. And in *Chimento v. Stark*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), *aff'g* 353 F. Supp. 1211 (3-judge panel, D.N.H.1973), a similar seven year requirement for governor was upheld. While it is true that summary affirmances must be read with care, there can be no doubt that these recent cases hold that some durational residency requirements are constitutionally permissible. Such summary dispositions extend only to "the precise issues presented and necessarily decided by those actions," *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, ——, 101 S.Ct. 2882, 2888, 69 L.Ed.2d 800 (1981). That some durational residency requirements are constitutional was essential to disposition of these cases. Thus we are of the opinion that these recent Supreme Court affirmances control the outcome of the present controversy. In each case both infringement of the right to travel and equal protection violations were raised. Although it is not possible to determine on what basis the cases were affirmed it was necessary to reject both to affirm. Chimento and Sununu, supra, indicate that even seven years is a sufficiently tailored standard to be upheld by the Supreme Court.

660 F.2d 166, 168 (6th Cir. 1981); *see also Barrow v. City of Detroit Election Com'n*, 301 Mich. App. 404, 420-21 (2013) (noting that "*Green* was disavowed by the United States Court of Appeals for the Sixth Circuit long ago, and is no longer considered controlling precedent."). The Sixth Circuit then rejected the need to apply strict scrutiny, instead applying a test from a separate Supreme Court case that looked at whether a candidacy restriction was reasonably necessary to the accomplishment of legitimate state objectives, ultimately upholding the City of Akron's one-year residency requirement to run for City Council. *Id.* at 169 (citing *Bullock v. Carter*, 405 U.S. 134, 144 (1972)). This is a type of intermediate review between "rational basis" and "strict scrutiny" review. *See Joseph v. City of Birmingham*, 510 F. Supp. 1319, 1336 (E.D. Mich. 1981).

Here, Mason's six-month residency requirement is clearly reasonably necessary to accomplish legitimate state objectives in light of prior precedent. Other district and appellate courts have found significantly longer residency requirements on running for public office to be reasonably necessary to achieve legitimate government interests, including "the interest in exposing candidates to the scrutiny of the electorate, so voters may make informed choices; (2) the interest in protecting the community from outsiders who are interested only in their own selfish ends and not seriously committed to the community, and (3) the interest in having officeholders who are familiar with the problems, interests, and feelings of the community." *Id.*; *see also Beil*, 660 F.2d at 169 (finding one year residency requirement justified under this test); *In re Contest of November 8, 2011 General Election of Office of New Jersey General Assembly*, 210 N.J. 29, 53-54 (2012) (collecting cases upholding one-year residency requirements for office under intermediate review). At the hearing, Burrell suggested that the government is required to advance these justifications in the language of the ordinance or law itself in order for them to be valid but has cited no case law for this proposition. These tests are meant for court application when reviewing legislation. There is no need for legislation to justify itself in such a manner as Plaintiff suggests. Accordingly, Burrell has not shown that he is likely to succeed on his Equal Protection Claims.

  b. <u>Does application of the six-month requirement violate Burrell's right to vote?</u>

Laws seeking to challenge state election regulations under the First Amendment are evaluated under the "three step *Anderson-Burdick* framework, in which [courts] 'weigh the character and magnitude of the burden the State's rule imposes on Plaintiffs' First Amendment rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.'" *Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir.

2019) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). This test "serves 'as a single standard for evaluating challenges to voting restrictions.'" *Libertarian Party of Kentucky v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016) (quoting *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015)).

Burrell's challenge does not advance a clear argument regarding how the residency requirement violates his right to vote. At points, language in the complaint suggests that the requirement violates the right of others to vote for him, or perhaps his right to vote for himself. But there is no right to vote for a specific candidate. *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998). Nor is there a fundamental right to stand for public office, and consequently to vote for oneself. *Kowell v. Benson*, 18 F.4th 542, 547 (6th Cir. 2021) (citing *Clements v. Fashing*, 457 U.S. 957, 963 (1982); *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989)). Even though there may be some recognized First Amendment interest in running for office, restrictions on such an interest would be reviewed either under rational basis or under the intermediate review already detailed above.[3] Whether under rational basis or intermediate review, the residency requirement would survive due to the government's legitimate interest and the relatively small burden placed on Burrell's rights. Accordingly, Burrell has not demonstrated a likelihood of success on the merits of his right to vote claim.

   c. <u>Was the Tennessee Open Meetings Act Violated?</u>

As a threshold matter, the Defendants argue that these claims are not properly before the Court, as they are based solely on the Court's ability to exercise supplemental jurisdiction over state law claims if a federal law claim arising from the same common nucleus of operative facts

---

[3] In a recent case, the Sixth Circuit stated, almost as an aside, that "qualifications for office don't restrict ballot access," which would make the entire *Anderson-Burdick* framework inapplicable to the claims here. *Kowall*, 18 F.4th at 547 n.2.

exists. Since they claim that Burrell has not adequately demonstrated any federal claims, they consequently argue that the Court has no jurisdiction over solely state law questions. The Court agrees.

Burrell has not demonstrated a likelihood of success on the merits of his federal claims, and thus not demonstrated that this court should exercise supplemental jurisdiction over his state law claims. Defendants cite to the recently decided case of *Newsom v. Golden*, which held that "the Court will not issue an injunction based on state law claims that it may not retain[.]" --- F. Supp. 3d ---, 2022 WL 1500860, at *5 (M.D. Tenn. May 12, 2022) (citing *Kowall*, 18 F.4th at 549). It would be improper for a federal court to grant an injunction based solely on state law grounds where no federal questions or claims exist. *See Kowall*, 18 F.4th at 549 (finding that "it is usually best to allow the state courts to decide state issues" when a federal court dismisses all pending federal claims before trial) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

    d. <u>Was the residency decision correct?</u>

Finally, given the time devoted at the hearing, the Court sees a need to briefly address the merits of the Commission's decision to deny Burrell placement on the ballot due to the residency requirement. Burrell's counsel indicated that part of Burrell's argument is that even if the residency requirement was constitutional, Burrell satisfied its strictures. Both sides introduced exhibits into evidence and offered testimony regarding Burrell's residency in Mason. Burrell, at least in part, seeks a rehearing regarding his residency in Mason. However, the Court believes that it is not its place to determine whether the Commission's decision was ultimately correct. A few considerations support this decision.

9

First, much like Burrell's claims under the Tennessee Open Meetings Act, any determination of whether the residency requirement was accurately applied to Burrell would be a purely state law question. Without a parallel federal claim, the Court would lack jurisdiction. Second, the Defendants point to a Tennessee Supreme Court case that provides the correct path for review of the Commission's determination. In *McFarland v. Pemberton*, the Tennessee Supreme Court stated that the proper method for challenging an Election Commission's application of office eligibility requirements is "through common-law writ of certiorari[.]" 530 S.W.3d 76, 103 (Tenn. 2017). When determining eligibility, "the Election Commission [is] performing a quasi-judicial function [and] its decision [is] subject to judicial review by common-law writ of certiorari." *Id.* at 104. According to counsel at the hearing, this would require Burrell to file a writ of certiorari in the Chancery Court of Tipton County, which would prompt a collection of the record and judicial review. This option is still open to Burrell, as his time limit to do so has not yet passed.[4] Accordingly, the Court declines to re-examine whether the Commission's decision was the correct one.

2. <u>Irreparable Harm</u>

When determining whether to grant a temporary restraining order, the court is to balance all factors, although "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determining factor." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). Where a plaintiff "does not have a likelihood of success on the merits," the argument that irreparable harm will follow from the denial of a temporary restraining order must fail. *See McNeilly v. Land*, 684

---

[4] At the hearing, Burrell argued that this was meaningless in light of the Defendants' contention that it is too late to replace ballots. But this lack of remedy for Burrell's alleged injury would be true regardless of whether a review of the underlying decision is done here or is sent down to state court where it properly belongs.

F.3d 611, 620-21 (6th Cir. 2012). As discussed above, Burrell has not demonstrated a likelihood of success on the merits of any of his claims. Accordingly, the Court finds that there is not a risk of irreparable harm were the temporary restraining order to not issue.

3. *Substantial Harm to Defendants and Furtherance of the Public Interest*

As noted above, the third and fourth factors of the analysis merge where the government opposes a temporary restraining order. The Defendants argue that both they and the public would suffer substantial harm were the temporary restraining order to issue, as placing Burrell on the ballot would require new ballots to be issued, given that many have already been sent to overseas and military voters. A new ballot, they contend, would disrupt the integrity of the election process, violate the requirement that military and overseas voters be mailed ballots no later than 45 days before the election, and potentially lead to the disenfranchisement of either confused voters or those unable to return their ballots in time.[5] The Court agrees.

Reprinting ballots would create a confusing election process that could potentially lead to the disenfranchisement of many eligible Mason voters. Further, were the Court to issue the temporary restraining order but somehow later find that Burrell was ineligible to run for Mayor, the results of the election could potentially be considered in violation of state law and would be merely provisional until the full federal case was resolved. Such "a last-minute change poses a risk of interference with the rights of other [Mason] citizens" and "at this late date it would be extremely difficult, if not impossible, for [Tipton County] to provide still another set of ballots." *Williams v. Rhodes*, 393 U.S. 23, 35 (1968). Burrell argued at the hearing that his letters to the Commission immediately following the decision to not allow him on the ballot absolves him of any blame regarding the disruption his sought remedy could cause. But Burrell cites no law stating

---

[5] Barrell's brief on this issue appears copied from a different case regarding claims of racial gerrymandering.

that one candidate sending a letter informing the Commission that he took issue with their determination requires delaying and changing an entire county's electoral calendar. Blame for the state of affairs is arguably irrelevant; Burrell's sought remedy would cause substantial harm to the Defendants and not be in the public interest, given the compelling interest a state has in preserving the integrity of its election process. *City of Memphis v. Hargett*, 414 S.W.3d 88, 103 (Tenn. 2013).

### IV.   CONCLUSION

After weighing all factors, the Court finds that Burrell has not carried the extraordinary burden placed on plaintiffs seeking a temporary restraining order. Accordingly, his motion is **DENIED**.

**IT IS SO ORDERED** this 27th day of September, 2022.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
